# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LYUDMILLA ANENKOVA, Individually** | : | **CIVIL ACTION** |
| **and on behalf of others similarly situated** | : | |
| | : | |
| **v.** | : | **NO. 15-4968** |
| | : | |
| **VAN RU CREDIT CORPORATION and** | : | |
| **DOES 1 through 10, Inclusive** | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                             **August 17, 2016**

      In this action brought under the Fair Debt Collection Practices Act ("FDCPA"), we must decide whether there is a benign language exception to 15 U.S.C. § 1692f(8), which prohibits a debt collector from using "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer"; and if so, whether the barcode visible through a glassine window of an envelope is benign.

      Lyudmilla Anenkova claims Van Ru Credit Corporation used unlawful tactics to collect a debt in violation of the FDCPA.[1] She alleges that Van Ru, through a mail vendor, sent a debt collection letter with a barcode visible through a glassine window in the envelope's return address field. She contends the barcode, when scanned, reveals "personal, identifying information."[2] Van Ru argues that the barcode does not violate the FDCPA because it does not disclose that the sender is a debt collector or that Anenkova is a debtor.

      We conclude there is a benign language exception to § 1692f(8). Because we find that the barcode was benign, there is no violation of § 1692f(8). Therefore, the defendant is entitled to judgment as a matter of law.

**Background**

On August 4, 2015, Calvary Portfolio Services, LLC, assigned Anenkova's Bank of America credit card account to Van Ru.[3]  The next day, Van Ru sent Anenkova a letter seeking to collect a credit card debt of $12,261.45.[4]  The letter was printed, folded, placed in the envelope and mailed by RevSpring, a mail vendor hired by Van Ru.[5]

The envelope had two glassine windows, one for the mailing address and the other for the return address.[6]  Anenkova claims and Van Ru disputes that the "mail return barcode" on the enclosed letter was visible through the return address window.[7]  Examination of the envelope shows that it was clearly visible.[8]

When scanned, the barcode reveals a sequence of twenty-five numbers, consisting of RevSpring's own five-digit customer identification number for Van Ru, an eight-number "identifier" for the particular mailing, and twelve numbers for the date and time of the mailing.[9]  RevSpring uses the eight-digit "identifier" to locate each piece of mail returned as undeliverable in its data file and then match it to Van Ru's account number for the debtor.[10]  The numbers do not contain or resemble Anenkova's account number with Van Ru.[11]  They are created by and for RevSpring to generate reports to Van Ru.  The numbers in the barcode mean something to RevSpring and nothing to Van Ru.

Moving for summary judgment, Van Ru contends that the barcode does not violate the FDCPA because it does not disclose Anenkova's personal, identifying information or that the communication was a debt collection effort.  Van Ru essentially argues that the barcode is subject to the benign language exception to § 1692f(8).[12]  Anenkova contends there is no such exception; and, even if there was, the barcode

2

violates the FDCPA because it reveals "personal identifying information" that can be linked to her account number.[13]

## Analysis

In determining whether the barcode in this case violates § 1692f(8), we must first consider whether there is a benign language exception to § 1692f(8).

Section 1692f(8) of FDCPA prohibits debt collectors from:

> [u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(8).

Read literally, the statute permits only the sender's name and address to appear on the envelope, and not the intended recipient's name and address. It prohibits even innocuous or harmless markings on the envelope.

No circuit court has adopted a literal interpretation of the statute. The Fifth and the Eighth Circuits, the only circuits to interpret the provision, have rejected such a restrictive reading. *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 319 (8th Cir. 2004); *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 494 (5th Cir. 2004). Instead, they have adopted the benign language exception. Those courts held that the statute proscribes only markings that identify the mailing as a debt collection matter or reveal the debtor's financial predicament and personal information. *See Strand*, 380 F.3d at 319; *Goswami*, 377 F.3d at 494. Any other markings are considered benign. *Id.*

The Fifth Circuit concluded the statute was ambiguous because there was more than one reasonable way to interpret it. *Goswami*, 377 F.3d at 494. It then looked to the legislative history and the Federal Trade Commission's ("FTC") interpretation. *Id.* at

494. The court observed that the Senate characterized the prohibition as applying to "symbols on envelopes indicating that the contents pertain to debt collection." *Id.* (citing S. Rep. No. 95-382 at 8 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1702). Implementing the statute, the FTC exempts "harmless words and symbols" from the ambit of § 1692f(8), and permits language that does not "suggest the purpose of the communication." *Goswami*, 377 F.3d at 494. (citing Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-02, 50108 (Dec. 13, 1988)).

The Eighth Circuit, noting that a literal interpretation of the statute would render an absurd result, held that a corporate logo and the words "personal and confidential" and "immediate reply requested" on a debt collection envelope did not violate § 1692f(8). *Strand,* 380 F.3d at 318-19. The court found this language and the logo benign because they did not reveal that the contents pertained to debt collection.

The Third Circuit has not adopted the benign language exception. Nor has it rejected it. When presented the issue, it declined to decide it. *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303, 306 n.9 (3d Cir. 2014).

Though it did not decide whether there is a benign language exception, the *Douglass* court did not rule it out. *Id.* Without rejecting or disagreeing with the Fifth and Eighth Circuits, the *Douglass* court distinguished those cases. It noted that *Strand* and *Goswami*, unlike the case before it, involved innocuous markings that "did not intimate the contents of the letters to pertain to debt collection." *Id.* at 305. "[Those] courts did not confront an envelope that displayed core information relating to the debt collection and susceptible to privacy intrusions." *Id.* The critical difference was that "[t]he

disclosures in *Goswami* and *Strand* do not raise the privacy concerns present in this case." *Id.* at 304.

The issue in *Douglass* was whether disclosure of the debtor's account number, which was visible through a glassine window of the debt collector's envelope, violated § 1692f(8). The court held that it did, finding that disclosing the account number was not benign. *Id.* at 301.

The *Douglass* court proceeded in two steps. First, it concluded that "§ 1692f(8) applies to language visible through a transparent window of an envelope," even though the statute speaks to language "on any envelope." *Id.* at 302. Second, it held that because the account number is a core "piece of information capable of identifying Douglass as a debtor," it is "impermissible language or symbols under § 1692f(8)." *Id.* at 306. Thus, *Douglass* holds that exposing the debtor's account number through a transparent window in a mailing envelope violates § 1692f(8).

Prior to *Douglass*, Judge Diamond had applied the benign language exception when he determined that a QR code[14] created by a letter vendor for processing returned mail did not violate § 1692f(8). *Waldron v. Prof'l Med. Mgmt.*, No. 12-1863, 2013 WL 978933, at *3 (E.D. Pa. Mar. 13, 2013). The QR code was visible through a "transparent pane" in a debt collection envelope. Once scanned, it revealed a string of alphanumeric characters consisting of the recipient's name and address, the amount of the debt, the debt collector's alleged internal account number for the debtor, and various other identifying codes. *Id.* at *1. Judge Diamond found that the "jumble of letters and numbers" revealed nothing to a person without the means to decipher it. *Id.* at *5 (quoting *Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1183 (10th Cir. 2011) (citing

*Shulick v. Credit Bureau Collection Servs., Inc.*, No. 02-1127, 2004 WL 234374, at *1 (E.D. Pa. Feb. 3, 2004)). Relying on the Fifth Circuit, he concluded that because the QR code and its embedded combination of letters and numbers did not clearly refer to a debt, they were benign and did not violate § 1692f(8). *Id.* at *6. We agree with Judge Diamond's reasoning and conclusion.

After *Douglass*, district courts in this Circuit have applied § 1692f(8) to prohibit visible barcodes or QR codes that, when scanned, reveal a debtor's account number. *See, e.g.*, *Daubert v. NRA Grp., LLC,* --- F. Supp. 3d ----, No. 3:15-00718, 2016 WL 3027826, at *7 (M.D. Pa. May 27, 2016); *Berry v. ARS Nat'l Servs., Inc.*, No. 15-1529, 2015 WL 9315993, at *3 (E.D. Pa. Dec. 23, 2015); *Link v. ARS Nat'l Servs., Inc.*, No. 15-643, 2015 WL 8488674, at *4 (W.D. Pa. Nov. 2, 2015), *report and recommendation adopted* 2015 WL 8271651 (W.D. Pa. Dec. 8, 2015); *Styer v. Prof'l Med. Mgmt., Inc.*, 114 F. Supp. 3d 234, 241 (M.D. Pa. 2015). In all these cases, the district courts, faithful to *Douglass,* held that because the barcodes revealed the debtors' account numbers, they violated § 1692f(8).

In *Palmer v. Credit Collection Servs., Inc.*, --- F. Supp. 3d ----, No. 15-1681, 2015 WL 9315988 (E.D. Pa. Dec. 22, 2015), the district court applied *Douglass* more expansively. It held that barcodes are *per se* violative of § 1692f(8). The barcode at issue included a scrambled version of the debt collector's internal file number for the debtor. It did not disclose the debtor's account number. Nevertheless, the court concluded the barcode was impermissible. *Id.*

Courts outside the Third Circuit have rejected *Douglass*. They have construed § 1692f(8) to permit account numbers on debt collection envelopes. *See, e.g.*, *Alvarado*

*v. Northland Grp., Inc.*, No. 15-0645, 2015 WL 7567091, at *3 (W.D. Mo. Nov. 19, 2015) (dismissing claim that visible account number violated FDCPA); *Perez v. Glob. Credit and Collection, Corp.*, No. 14-9413, 2015 WL 4557064, at *5 (S.D.N.Y. July 27, 2015) (same); *Gonzalez v. FMS, Inc.*, No. 14 C 9424, 2015 WL 4100292, at *1 (N.D. Ill. July 6, 2015) (same). Courts have regularly allowed debt collectors to use tracking numbers on mail. *See, e.g.*, *Datta v. Asset Recovery Solutions, LLC*, --- F. Supp. 3d ----, No. 15-00188, 2016 WL 3163142, at *6 (N.D. Cal. June 7, 2016) (collecting cases).

Bound by *Douglass*, we cannot follow those cases from outside the Third Circuit that do not prohibit exposing a debtor's account number on an envelope. Nor do we agree with the *Palmer* court that the use of a barcode is a *per se* violation of § 1692f(8). Instead, we hold that there is a benign language exception to § 1692f(8) and, depending on the circumstances of the case, it applies to barcodes.

The reasoning of the Fifth and Eighth Circuits is persuasive. Literal application of § 1692f(8) allows only the "debt collector's address" and "name if such name does not indicate that he is in the debt collection business." 15 U.S.C. § 1692f(8). It does not allow adding the debtor's name and address or postage markings, rendering mail from collection agencies virtually undeliverable. *Strand*, 380 F.3d at 318; *Gardner v. Credit Mgmt. LP*, No. 14-9414, 2015 WL 6442246, at *2 (S.D.N.Y. Oct. 23, 2015) (noting "the absurd result that a statute governing the manner in which the mails may be used for debt collection might in fact preclude the use of the mails altogether"); *Waldron*, 2013 WL 978933, at *2. Congress did not intend such an absurd result.

When "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," *United States v. Fontaine*, 697 F.3d 221, 227

7

(3d Cir. 2012) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989)), courts must construe the statute "sensibly and avoid constructions which yield absurd or unjust results." *Id.* (quoting *United States v. McKie*, 112 F.3d 626, 631 (3d Cir. 1997)). In other words, "courts may presume Congress intended an exception to a statute that otherwise produces absurd results." *Douglass*, 765 F.3d at 303 (citations omitted).

*Douglass*, although it neither adopted nor rejected the benign language exception, did not disagree with the Fifth and Eighth Circuits' reasoning and conclusions. *Id.* at 304-05. It acknowledged that courts may presume that Congress did not intend an absurd result. *Id.* at 303. But, it cautioned that "the contours of such an exception must comport with the purposes of the Act." *Id.* (citations omitted). Accordingly, any disclosure on the envelope must be analyzed through the prism of the purposes of the FDCPA. *Id.*

A literal interpretation goes beyond what Congress intended. As expressed in § 1692, the purpose of the FDCPA is to protect the debtor's privacy and to prevent abusive and coercive debt collection practices. *Goswami*, 377 F.3d at 494; *Strand*, 377 F.3d at 318-19. Thus, if the language and markings do not intrude upon the debtor's privacy by revealing her personal information, or identifying her as a debtor or the communication as a debt collection matter, they are not abusive and coercive.

Congress sought to prohibit only abusive and unfair debt collection practices. It did not intend to ban all debt collection methods. The statute specifically states that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c). Congress did not

intend to eliminate mailing as a collection method, a result that would ignore the stated purpose of the FDCPA "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). A mailing that is not abusive and does not embarrass the debtor by disclosing her financial predicament or invade her privacy is not prohibited. Thus, an interpretation that would ban all mailings would yield an unintended absurd result contrary to the purpose of the FDCPA.

Guidelines issued by the FTC support a benign language exception.[15] 53 Fed. Reg. 50097-02, 50108. Although these guidelines are not binding, they are persuasive. *See Douglass*, 765 F.3d at 305 n. 7 (citing *Goswami*, 377 F.3d at 493 n.1). Under the "Harmless words or symbols" note heading, the guidelines advise that a debt collector does not violate § 1692f(8) "by using an envelope printed with words or notations that do not suggest the purpose of the communication." 53 Fed. Reg. at 50097-02, 50108; *see also Waldron*, 2013 WL 978933, at *2 (citations omitted).

In summary, Congress enacted the FDCPA to protect debtors from abusive debt collection practices and the invasion of their privacy without disadvantaging scrupulous debt collectors. Words or symbols that do not reveal the nature of the communication, the debtor's financial predicament or personal information were not intended to be prohibited. Stated differently, only language or markings that identify the communication as related to a debt or reveal the debtor's personal identifying information violate § 1692f(8). Therefore, we conclude there is a benign language exception to § 1692f(8).

Having recognized a benign language exception, we turn to whether the exception applies to the barcode in this case. The key inquiry is whether the scanned barcode implicates the privacy concerns of § 1692f(8). Anenkova argues that it does. Without offering any evidence to show how the barcode is "capable" of identifying her as a debtor, she speculates that it does. She contends that in the wake of *Douglass*, district courts in the Third Circuit have uniformly applied *Douglass* to prohibit barcodes that, when scanned, reveal "a sequence linked to addressee's account information."[16] Her characterization of what *Douglass* prohibits is broader than what *Douglass* held.

*Douglass* does not prohibit the use of all barcodes. Only those barcodes or QR codes, visible to the public, that disclose that the communication is a debt collection effort and exposes the debtor's financial predicament and personal identifying information violate § 1692f(8).

*Douglass* found that the disclosure of the debtor's account number on the envelope implicated "a core concern animating the FDCPA—the invasion of privacy." *Douglass*, 765 F.3d at 303. The account number revealed that the addressee was a debtor and the letter was a debt collection effort. Thus, the court concluded it was not benign. *Id.* at 303-04.

This case is distinguishable from *Douglass*. First, in *Douglass*, the plaintiff's account number and a QR code that contained the account number were visible through a glassine window. Anenkova's account number with Van Ru is not embedded in the barcode. Nor is it visible upon inspection of the envelope.[17] Second, in *Douglass*, the account number "could be used to expose [the debtor's] financial predicament." *Douglass*, 765 F.3d at 303. Anenkova does not provide any realistic

scenario, nor do we discern any, where the barcode could be used by a third party to learn any information about her or her financial condition.

The barcode contains a unique tracking number used by RevSpring to identify returned mail. It does not contain Anenkova's account number maintained by Van Ru or her personal identifying information. It does not identify her as a debtor nor refer to a debt.

When scanned, the barcode reveals a twenty-five digit sequence of numbers.[18] The first five digits are RevSpring's identification number for Van Ru.[19] The following group of eight digits is a unique "identifier" for the particular piece of mail.[20] Although the significance of this identifier is disputed, the parties agree that it corresponds to where the particular mailing resides in RevSpring's, not Van Ru's, data file.[21] The last group, consisting of twelve digits, reflects the date and the time that RevSpring begins processing Van Ru's mail request.[22] Van Ru's assigned account number is not embedded in the twenty-five-digit barcode created by RevSpring. The information is useless to Van Ru.

Assuming that one could decipher the components of the twenty-five digit code, no prohibited information would be revealed. The unique identifier, generated and used by RevSpring to locate the returned mail in its data file, does not communicate anything to a third party. Without a RevSpring insider's cooperation, a third party could not correlate RevSpring's number with the account number Van Ru assigned to Anenkova.

In an attempt to create a disputed material fact, Anenkova claims that "the barcode is generated based on the position of Plaintiff's record within Defendant's files."[23] Van Ru did not have access to RevSpring's data file. Van Ru's corporate

designee, Michael Martin, did not know what the data file contained or if it was Van Ru's.[24] RevSpring confirmed that its "internal database" is used to identify returned mail.[25]

To get around this lack of connection, Anenkova argues that RevSpring is Van Ru's agent. As such, its actions are attributable to Van Ru.[26] This argument does not show how one deciphering the barcode could link it to the account number at Van Ru.

Even if Van Ru also had the data file, it is immaterial. One who successfully decoded the barcode still could not learn that the information related to a debt collection matter. The tracking number utilized by Van Ru's mail vendor could not be used by anyone to reveal that it pertains to a debt or the debtor's personal information. Indeed, even Van Ru could not decipher the code. RevSpring's eight-digit identifier does not resemble Van Ru's account number for Anenkova. Nor is it created using Anenkova's account number.

Anenkova claims that "nefarious third parties" could use the barcode to expose her private information,[27] including her name, address, account numbers, balance breakdown, creditor identification, and pin numbers.[28] She claims Van Ru regularly communicated this information to RevSpring in order to generate the collection letters.[29] Anenkova argues that the barcode was "linked" to her private information because RevSpring generated each barcode based on the position of a "record" in its "data file."[30] But, she does not explain how this connection could be made without someone hacking into RevSpring's computer system or illegally obtaining information from a RevSpring employee.[31] Counsel also suggested that Anenkova's information could be disclosed if RevSpring went out of business and sold its computers to a third party

without deleting private information.[32] In these scenarios, the third party would not need the information embedded in the barcode to get it. The third party would be in the system and would not need a barcode.[33] Nor can the barcode provide a gateway into the system.

The barcode sequence did not identify the purpose of the communication or disclose Anenkova's financial status. Instead, it correlated Anenkova's letter to RevSpring's mailing record. It simply tracked a piece of mail. Although the sequence of numbers communicated something to RevSpring, it did not implicate Anenkova's privacy concerns. In short, the barcode did not reveal Anenkova's private information or impart that the mailing was a collection effort.

The barcode on Anenkova's letter was not a core piece of information related to her status as a debtor. Rather, it was information created by a mail vendor to process returned mail. It served a legitimate purpose and did not implicate the FDCPA's purpose to prohibit abusive debt collection practices and to protect the debtor's privacy. It was benign.

## Conclusion

Because the barcode is benign, it does not violate § 1692f(8). Therefore, we shall grant summary judgment in favor of the defendant.

---

[1] 15 U.S.C. § 1692 *et seq.*

[2] Compl. (Doc. No. 1) ¶ 19.

[3] Mot. for Summ. J., Ex. 2 ("Undisputed Facts") (Doc. No. 16-2) ¶ 23.

[4] Undisputed Facts ¶¶ 16, 29.

[5] Undisputed Facts ¶ 32.

[6] Mot. for Summ. J. (Doc. No. 16-1) at 13-14; Resp. (Doc. No. 17) at 2-3.

---

[7] Resp. at 3.

[8] Oral Arg. Tr. 66:21-68:1.

[9] Undisputed Facts ¶ 51; Resp. at 7-8; Oral Arg. Tr. 4:22-8:2.

[10] Resp., Ex. G (Doc. No. 17-11) at VR000007.

[11] Undisputed Facts ¶ 49.

[12] Van Ru makes additional arguments. They are: Anenkova cannot prove the underlying debt was primarily for personal, family, or household purposes; she cannot prove the barcode was visible through the window on the envelope when it first arrived; the barcode was not unlawful because it was not capable of objectively affecting the least sophisticated consumer's decision-making; and Van Ru should not be held liable for the possibility that a third party could unlawfully scan the barcode. Mot. for Summ. J. at 2-3. In light of our conclusion regarding the benign language exception, we do not address these issues.

[13] Resp. at 27-29, 31, 33.

[14] A QR code, or "Quick Response Code," is a specific type of barcode. It contains encoded information that can be scanned by a device such as a smartphone to decode the information. *See Waldron v. Prof'l Med. Mgmt.*, No. 12-1863, 2013 WL 978933, at *1 (E.D. Pa. Mar. 13, 2013); *see also Styer v. Prof'l Med. Mgmt., Inc.*, 114 F. Supp. 3d 234, 236 (M.D. Pa. 2015).

[15] The FTC's nonbinding guidelines "are intended to clarify the staff interpretations of the statute." 53 Fed. Reg. 50097-02, 50101.

[16] Resp. at 27.

[17] Undisputed Facts ¶¶ 48-49.

[18] Resp. at 7-8.

[19] *Id.* at 7.

[20] *Id.* at 7-8; Opp'n to Pl.'s Mot. for Leave to File Sur-Reply (Doc. No. 23) at 4-6; Oral Arg. Tr. 7:18-8:10.

[21] Resp. at 7-8; Resp., Ex. G (Doc. No. 17-11) at VR000007.

[22] Oral Arg. Tr. 7:18-8:10; Resp., Ex. G at VR000007; Resp. at 8.

[23] Resp. to Undisputed Facts (Doc. No. 17-3) ¶ 35.

[24] Resp., Ex. B ("Martin Dep. Tr.") (Doc. No. 17-6) 117:5-8.

[25] Resp., Ex. G at VR000007 ("Our internal database will hold all necessary details for each record, that the scans for mail return will be matched against, prior to being reported to Van Ru.")

[26] Oral Arg. Tr. 40:21-24.

[27] Resp. at 31-32; *see also* Compl. ¶ 23 ("Defendant significantly increased the risk that Plaintiff would be a victim of identity theft.").

[28] Resp. to Undisputed Facts ¶¶ 35, 38; Martin Dep. Tr. 28:7-11, 84:21-85:4.

[29] Martin Dep. Tr. 27:14-28:11.

---

[30] Resp. to Undisputed Facts ¶¶ 35, 38.

[31] Oral Arg. Tr. 24:14-25:23, 48:6-21.

[32] *Id.* 48:23-25.

[33] *Id.* 26:3-8.